UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DERRICK LAWAYNE DEALS, #431306,

|                                          |                                          |
|------------------------------------------|------------------------------------------|
| Petitioner,                              | Case No. 1:08-cv-1000                    |
| v.                                       | Honorable Paul L. Maloney                |
| MARY BERGHUIS,                           | **REPORT AND RECOMMENDATION**            |
| Respondent.                              |                                          |

_____/

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner is serving concurrent terms of 168 months-to-30 years and 2-to-4 years on convictions for conspiracy to commit armed robbery, MICH. COMP. LAWS §§ 750.157a(a), 750.529, and assault with a dangerous weapon, MICH. COMP. LAWS § 750.82.  The Cass County Circuit Court imposed these sentences on October 14, 2005, after petitioner was convicted by jury trial.  Petitioner appealed his conviction to the Michigan Court of Appeals, which affirmed conviction with an unpublished *per curiam* opinion issued March 20, 2007.  The Michigan Supreme Court denied leave to appeal on October 29, 2007.

Petitioner initiated the present habeas corpus proceeding by filing a *pro se* petition on October 27, 2008.  The petition raises seven grounds for habeas corpus review:

I.      There was insufficient evidence to convict under the U.S. Constitution.

II.     The conviction was against the great weight of evidence in violation of the U.S. Constitution.

III.     Petitioner was denied his right to confront his accusers in violation of the U.S. Constitution.

IV.     Petitioner was denied his right to a fair trial under the U.S. Constitution.

V.      Petitioner's sentence did not comport with due process of law as required under *Apprendi*.

VI.     Petitioner's guideline scores were improper and denied him his due process rights.

VII.    Petitioner was denied his right to effective assistance of counsel.

Respondent has filed an answer, supported by the state trial and appellate records.

This matter has been referred to me for issuance of a report and recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B). For the reasons set forth below, I conclude that petitioner's first, third, fourth, and seventh grounds for habeas corpus relief should be denied on their merits, and his second, fifth, and sixth grounds are not cognizable in habeas corpus. I therefore recommend that the petition be denied.

## **Proposed Findings of Fact**

### **A.     Trial Court Proceedings**

This prosecution arose from the attempted armed robbery of the Cottage Inn in Dowagiac, Michigan, on August 14, 2003, and the ensuing assault of Kenneth Kiggens. At the time, the building was occupied by Milissa McCrorey (the owner's daughter), Ruby (a bartender), Jennifer Nystedt (a former employee in search of work), and patrons Kenneth Kiggens, Matthew Kiggens, Jeffrey Collett, Jack Dailey, III, and Robert Sink.

The attempted robbery was perpetrated by three men. One man wore a "Scream" mask and carried a gun, while another wore a "Jason" hockey mask and carried a baseball bat. (Trial Transcript (TT) I, 150-152, docket # 14). The third robber stood by the door and carried a knife.

(TT II, 140-141, docket # 15).  The three perpetrators were identified by exposed skin as African American. (TT I, 151, 189; TT II, 141).  The gunman moved towards the bar, where it was generally known in the community that extra cash was on hand Thursday nights for check-cashing. (TT I, 169-170). The man in the Jason Mask shouted for the customers to get on the floor and then struck Kenneth Kiggens twice, once on the hip, and once on the head.  (*Id.*, 186-188).  Kenneth Kiggens' brother, Matthew Kiggens, attacked the robber armed with the bat, and, in the struggle, pulled off his shirt.  (TT II, 75-77).  Jeffrey Collett, the Kiggens' cousin, assailed the man wielding the knife. (*Id.*, 141). At that point, the gunman returned and shot Jeffrey Collett in the shoulder and Matthew Kiggens in the arm, at which time the three robbers made their escape.  (TT I, 157-158).  The perpetrators left behind the t-shirt and the Jason mask, along with an earring.  (*Id.*, 103).  Petitioner was found to be the major donor of the DNA on all three items. (TT II, 49-50).

Several hours after the events at the Cottage Inn, petitioner and two other men, Christopher Brinkley and Herbert Ford, arrived at the Dowagiac home of Richard Davis, Brinkley's uncle. (TT II, 109).  Brinkley asked for, and received, a change of clothes for himself and for Ford, and for a ride. (*Id.*, 111).  Davis drove Brinkley and Ford to Niles, Michigan. (*Id.*, 115).  Petitioner did not accompany the others, but rather asked for directions to Chicago and departed hurriedly.  (*Id.*, 113-114). Davis learned of the robbery at the Cottage Inn several days later and informed the police about the incident.  (*Id.*, 118).  Although initially unable to identify petitioner, Davis eventually recalled his identity.  (*Id.*, 119).  Davis also confirmed that Brinkley worked for one of the companies whose employees regularly used the Cottage Inn's check-cashing services.  (*Id.*, 120).

Petitioner was charged with conspiracy to commit armed robbery, assault with a deadly weapon and two counts of assault with intent to rob while armed.  Jury trial began in the Cass

County Circuit Court on September 13, 2005, and continued until September 15.  The jury found petitioner not guilty with regard to the two counts of assault with intent to rob while armed, but otherwise guilty as charged.  (TT III, 29-30, docket # 16).  Petitioner was sentenced on October 14, 2005.  The court sentenced him to concurrent terms of 168 months-to-30 years and 2-to-4 years. (Sentencing Transcript, docket # 17).

> ### B.    Appellate Proceedings

Petitioner, through counsel, appealed as of right to the Michigan Court of Appeals. During the pendency of the appeal, petitioner's counsel filed with the Cass County Circuit Court a motion for a new trial and/or re-sentencing, which the circuit court denied in an order dated April 28, 2006.  (*People v. Deals*, Cass County Circuit Court No. 05-10031-FC & No. 05-10057-FC (2006), copy of 4/28/06 order attached to Petitioner's Reply Brief, docket # 21).  In June, 2006, plaintiff filed a Brief on Appeal with the Michigan Court of Appeals.  His appellate brief raised seven issues:

I.     [Petitioner's] convictions should be overturned because there was insufficient credible evidence at trial to prove that [Petitioner] is guilty.

II.    [Petitioner's] convictions must be reversed because they are against the great weight of evidence and involve a miscarriage of justice.

III.   The trial court denied [Petitioner] a fair trial by allowing into evidence a co-defendant's statements which violated [Petitioner's] constitutional right to confront witnesses against him, did not conform to MRE 801, and were more prejudicial than probative, thus violating MRE 403 and denied the [Petitioner's] motion for a new trial and/or sentencing.

IV.    The Prosecutor's actions denied [Petitioner] a fair trial and [violated] his due process rights under the Michigan and federal constitutions.

-4-

V.  [Petitioner's] sentence was invalid because it was based on inaccurate information, i.e. improper scoring of the legislatively imposed sentencing guidelines, and use of an incorrect burden of proof; therefore, his due process rights were violated.

VI.  Correctly scoring the guidelines would require re-sentencing.

VII.  [Petitioner] should get a new trial because of ineffective assistance of trial counsel.

(Defendant-Appellant's Brief, at i-iv, found in Michigan Court of Appeals record, docket # 18).

By *per curiam* unpublished opinion issued March 20, 2007, the Michigan Court of Appeals affirmed petitioner's convictions and sentences.  (docket # 18, *People v. Deals*, No. 266619 (Mich. Ct. App. Mar. 20, 2007)).  On the sufficiency of evidence claim, the court determined that, with clear evidence of concert of action, reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that the three perpetrators conspired to rob the Cottage Inn.  (Ct. of App. Opinion (Op.), 4).  Petitioner's alternate theories were deemed irrelevant as the prosecution was not obliged to negate every theory consistent with the defendant's innocence.  Likewise, because circumstantial evidence and reasonable inferences arising from evidence are potentially sufficient to establish the identity of a perpetrator, a rational trier of fact could find beyond a reasonable doubt that the robber with the Jason mask was petitioner.  (*Id.* at 3-4).  The court therefore found no merit to the insufficiency of evidence claim.

With regard to the claim that the convictions were against the great weight of evidence, the court found that the preponderance of evidence did not weigh against the verdict, such that it would be a  miscarriage of justice to allow the verdict to stand. (*Id.* at 4)

As to the admission of Brinkley's statement to his uncle, the court held it was not unfairly prejudicial to petitioner's case, nor was it irrelevant.  Also, the statement qualified as a co-conspirator's statement, and could thus be admitted as an exception to the hearsay rule.  The court

noted that conspiracies do not end when the agreement is formed, as petitioner contended, but rather when the enterprise is completed, abandoned or terminated, so petitioner's alternate claim that the conspiracy ended when the robbery failed held no weight. (Op., 2). Nor did the court give credence to petitioner's claim that Davis's home was a position of temporary safety, ending the crime and the conspiracy, thus rendering Brinkley's statement inadmissible. Rather, the court concluded that the three perpetrators' state of agitation and continued efforts to elude justice made Davis's home, at most, a "brief waystation" in their escape. (*Id*. at 3). Finally, the court concluded that Brinkley's statement was not testimonial in nature, and so its admission did not violate the Confrontation Clause of the Sixth Amendment. (*Id*.).

Regarding petitioner's challenge to certain prosecutorial actions, namely the deliberate use of irrelevant and prejudicial information and appeals to the sympathy or the sense of civic duty of the jury, the court noted these claims were unpreserved, but reviewed them for plain error. (Op., 4). As noted above, the court determined that evidence gleaned from Davis was properly admitted, and not prejudicial or irrelevant. Likewise, testimony concerning the DNA evidence was neither irrelevant nor unfairly prejudicial. The court therefore concluded that the prosecution did not engage in misconduct by introducing any of this testimony. (*Id.*, 5). The court also held that the prosecution, not limited to the blandest possible presentation of his evidence, did not unduly appeal to the sympathies or prejudices of the jury in an attempt to secure a conviction irrespective of the evidence, and was therefore free of misconduct on this charge as well. (*Id.*).

The court also rejected petitioner's claim that he was entitled to re-sentencing because of impermissible judicial fact-finding and the improper scoring of several offense variables. The court noted that, as to the former contention, the *Blakely* precedent does not apply to Michigan's

-6-

indeterminate sentencing scheme.  As to the latter, the court affirmed that the trial court properly scored the offense variables and that petitioner's minimum sentences fell within the resulting legislative guideline ranges.  (Op., 5-7).

As to the claim that petitioner was denied the effective assistance of counsel, the court merely noted it was unpersuaded of the merits of petitioner's arguments, as counsel is not ineffective for the failure to make futile motions.  Therefore, the court could not conclude that petitioner's trial counsel made errors severe enough to have resulted in a different conclusion to the proceedings below.  (Op., 7).

Petitioner filed a *pro se* application for leave to appeal to the Michigan Supreme Court.  By standard order entered October 29, 2007, the court denied discretionary review.  (docket # 19).  This habeas corpus action followed.

## **Applicable Standard**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review.  *See Penry v. Johnson*, 532 U.S. 782, 791 (2001).  AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (*per curiam*); *Renrico v. Lett*, 130 S. Ct. 1855, 1862 (2010).  "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006).  If a state court adjudicated the claim, deferential AEDPA standards must be applied.

28 U.S.C. § 2254(d); *see Premo v. Moore*, 131 S. Ct. 733, 739 (2011); *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.")(quoting 28 U.S.C. § 2254(d)).

AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. at 693-94. The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 131 S. Ct. at 786. Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Barghis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court may grant relief under the "unreasonable application" clause if that state court correctly identifies the governing legal principle

from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should apply or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010).

<u>Discussion</u>

## I.      Sufficiency of the Evidence

Petitioner's first habeas corpus claim is that the evidence was insufficient to convict him on the charges of conspiracy to commit armed robbery and assault with a deadly weapon. A section 2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weight the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id*. Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The Michigan Court of Appeals ruled directly on this claim, which petitioner's counsel raised on appeal. Review of this issue must be conducted under the AEDPA standard, which the Sixth Circuit has described as "very deferential." *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). Review of challenges to the sufficiency of evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA. *See Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). Effectively, such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*. *See Eady v. Morgan*, 515 F.3d 587, 596 (6th Cir. 2008). Review in such cases "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007). This standard presents a "very difficult hurdle" for the habeas petitioner. *Id*. at 437.

The Sixth Circuit recently summarized the "double layer of deference" given the state-court decisions in the context of sufficiency-of-the-evidence claims:

> Thus, after AEDPA, federal courts reviewing state habeas claims accord a double layer of deference:
>
> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

-10-

*White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).

In this case, petitioner questions the sufficiency of evidence establishing both the existence of a conspiracy to rob the Cottage Inn and his presence at the time of the crime. The Michigan Court of Appeals applied the appropriate constitutional standard to both contentions, namely examining whether the evidence, when viewed in a light most favorable to the prosecution, would justify a rational trier of fact finding that all the elements of the crimes were proven beyond a reasonable doubt. The elements of the crimes were not in question, merely the identity of the assailant and the sufficiency of proof of conspiracy.

As to his presence, petitioner acknowledged that his DNA was found on the multiple items of evidence abandoned at the crime scene, but offered alternate theories to explain how his DNA might be present in his absence. The state Court of Appeals accurately observed that, under Michigan law, the burden is not on the prosecution to disprove any theory consistent with the defendant's innocence. *People v. Hardiman*, 646 N.W.2d 158, 162 (Mich. 2002). The federal Constitution imposes no greater burden on the prosecution. *See Jackson*, 443 U.S. at 326 (prosecution has no affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt). The prosecution must only identify the accused as the culprit, and in doing so, the use of circumstantial evidence and reasonable inferences arising from evidence is acceptable. *People v. Nelson*, 594 N.W.2d 114, 117 (Mich. Ct. App. 1999); *People v. Kern*, 149 N.W.2d 216, 218 (Mich. Ct. App. 1967). Petitioner questions the credibility of Davis's testimony in this regard, but the credibility of the witness was a matter for the jury to decide and is not an appropriate subject for habeas review. *Pinchon v. Myers,* 615 F.3d 631, 644 (6th Cir. 2010). The only issue is whether

the jury could reasonably infer from the evidence that petitioner participated in committing the crime of conviction.  *See White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

The Court of Appeals applied the requirements for establishing identity from appropriate precedents in *Kern* and *Nelson*, and those requirements were satisfied by evidence.  An expert witness confirmed that the major DNA profile on the multiple items of evidence left at the scene matched that of petitioner.  (TT II, 49-50).  Multiple witnesses confirmed that petitioner matched the physique of the bat-wielding robber.  (TT I, 190, TT II 80, 143).  Richard Davis added additional testimony suggesting petitioner was one of the perpetrators by identifying petitioner's presence in Dowagiac with Brinkley and Ford on the night of the robbery, along with the skittish behavior they exhibited. (TT II, 113, 119).  The jury could reasonably have concluded petitioner was indeed the culprit in the Jason mask given the weight of DNA evidence and the supplemental corroboration of witnesses.  The Court of Appeals correctly relied on *Nelson* in approving the use of circumstantial evidence and reasonable inferences, arising from evidence, to reach this conclusion. (Op., 3).

Petitioner additionally questions the sufficiency of evidence proving the existence of a conspiracy to rob the Cottage Inn.  To prove the existence of a criminal conspiracy, the prosecution need only prove an agreement existed to accomplish an illegal objective.  *People v. Mass*, 628 N.W.2d 540, 549 (Mich. 2001).  In proving the existence of a conspiracy, the use of circumstantial evidence and reasonable inferences are acceptable, and proof of an actual agreement is unnecessary. *People v. Justice (After Remand)*, 562 N.W.2d 652, 654 (Mich. 1997).  Proof of the existence of the conspiracy can be gleaned from evidence of concert of action, which creates the inference of conspiracy.  *People v. Cotton*, 478 N.W.2d 681, 688-89 (Mich. Ct. App. 1991).

The Court of Appeals adopted the elements of the crime of conspiracy to commit-armed robbery from *Mass, Justice* and *Cotton*, and found that those elements were satisfied by the evidence.  The court correctly observed that the concert of action in this case is clearly suggestive of a criminal conspiracy.  (Op., 4).  The three perpetrators wore masks, were armed, and seemed to be working with common purpose to accomplish a single objective.  That their aim was robbery can be inferred from the movement of the gunman towards the bar and the cash register, while his confederates guarded the front door and the patrons.  The appellate court rightly considered the totality of the evidence as suitably suggestive of prior agreement and planning, even if no formal agreement was articulated within earshot of the victims.  (*Id*.).

Under any standard of review, the decision of the state Court of Appeals passes muster.  The court applied the correct constitutional standard, correctly identified the elements of the offenses as enunciated by the state Supreme Court, and reasonably applied the facts of the case.  The finding of the Court of Appeals that a conspiracy to commit armed robbery existed was supported by reasonable inferences from eyewitness testimony concerning the perpetrators' concert of action.  The finding of the court that petitioner was a member of that conspiracy, specifically the bat-wielding robber wearing the Jason mask, was supported by DNA evidence and the testimony of Richard Davis.  (TT II, 49-50, 119).  The decision of the state Court of Appeals was a reasonable application of the *Jackson v. Virginia* standard.  Petitioner's first claim for relief is therefore without merit.

## II.     Convictions Against the Great Weight of Evidence

Petitioner's second ground for relief states that his convictions were against the great weight of evidence and so created a miscarriage of justice.  On direct appeal, the Michigan Court of Appeals reviewed this claim and considered whether the evidence so heavily preponderated against the verdict so that it would a miscarriage of justice to allow the verdict to stand.  (Op., 4) (citing *People v. Gadomski*, 592 N.W.2d 75, 78 (Mich. Ct. App. 1998)).  The court found that the prosecution presented sufficient evidence to support both convictions.  (Op., 4).

 In making a "weight of the evidence" argument, petitioner has not asserted a federal claim as required by 28 U.S.C. § 2254(a).  The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial.  *See People v. Lemmon*, 576 N.W.2d 129, 135-37 (Mich. 1998).  This question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude."  *Id.* at 133 n.8.  Thus, this claim raises an issue of state law, for which habeas review is not available. Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. See 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"); *see also Freeman v. Twombly*, 744 F. Supp. 2d 697, 727-28 (E.D. Mich. 2010) (habeas court has no power to grant relief on the basis that the verdict was against  the weight of the evidence).  Petitioner's second claim fails to establish any basis for habeas corpus relief.

### III.    Confrontation Clause Claim

In his third claim, petitioner challenges the admission of Richard Davis's testimony concerning the statements of Christopher Brinkley on the night of the robbery. On direct appeal, petitioner challenged the admission of this testimony on a number of grounds, including hearsay. The state Court of Appeals rejected each challenge. The only ground that states a claim for habeas corpus relief is petitioner's claim under the Confrontation Clause.

Petitioner claims that the trial court violated his Sixth Amendment right to confront witnesses against him, as testimonial statements from out-of-court witnesses are admissible only when the witness is unavailable and when the defendant has previously had the opportunity to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). This assertion rests upon the idea that Brinkley's statement was testimonial in nature. Although the standard is not yet clearly defined, the Supreme Court has articulated a test which states that "Testimony . . . is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Davis v. Washington*, 547 U.S. 813, 824 (2006) (quoting *Crawford*, 542 U.S. at 51).

On appeal, the Michigan Court of Appeals correctly identified the applicable Supreme Court standard under *Crawford* and applied it without error. The notion that Christopher Brinkley's statement to his uncle on the night of the crime was testimonial in nature strains credulity. The statement was not made to a figure of authority, nor was it the result of an interrogation, nor was it made in a manner which was solemnly meant to establish or prove a fact. Plainly, Brinkley was not "testifying." *See Davis*, 547 U.S. at 824. The statement was made to a close relative in an effort to facilitate petitioner's escape from a failed robbery. Where the out-of-court statement is not

-15-

testimonial, the Confrontation Clause simply does not apply.  *Crawford*, 541 U.S. at 60-61. Therefore the admission of this statement from an out-of-court witness did not violate petitioner's Sixth Amendment right to confront witnesses against him.

## IV.      Denial of Right to Fair Trial Under the U.S. Constitution

In his fourth claim, petitioner alleges a violation of his right to a fair trial arising from prosecutorial misconduct.  The basis of this claim is that the prosecutor introduced irrelevant and prejudicial evidence, specifically the testimony by Richard Davis concerning Christopher Brinkley's statement on the night of the attempted robbery and expert testimony concerning the DNA evidence. Plaintiff also suggests that the prosecutor was allowed to appeal to the sympathy and civic duty of the jury.  Contemporaneous objections were not lodged in the  trial court, which would serve as a adequate state-law bar.  *See People v. Callon*, 662 N.W.2d 501, 513 (Mich. Ct. App. 2003).  The Michigan Court of Appeals reviewed these unpreserved claims for plain error, and considered them to be without merit.  Because contemporaneous objections were not raised, respondent raises the defense of procedural default.

Under a long line of Supreme Court cases, an adequate and independent finding of procedural default by the state courts will also bar federal habeas review of a state conviction, unless the habeas petitioner can show cause for the procedural default and prejudice attributable thereto. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Harrington v. Richter*, 131 S. Ct. at 787. The doctrine of procedural default is applicable where a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *See Brooks v. Tennessee*, 626 F.3d 878, 890 (6th Cir. 2010).  The state

may assert a procedural default when the last, reasoned opinion of the state courts clearly relies on a procedural bar in refusing to consider a claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If a petitioner is guilty of a procedural default in the state courts, the federal habeas court will only entertain the defaulted issue if petitioner bears the burden of showing cause and prejudice or can show actual innocence. *Murray v. Carrier*, 477 U.S. at 485.

In the present case, all of the prerequisites to a finding of procedural default are present. The state Court of Appeals expressly found that petitioner's challenge to the admission of Davis's testimony and the prosecutor's opening statement had not been preserved for review, because of petitioner's failure to make a contemporaneous objection at trial. The fact that the court went on to review the issue under a plain error standard does not constitute a waiver of state procedural default rules. *See Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Lundgren v. Mitchell*, 440 F.3d at 765; *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules."). Consequently, in the usual case, petitioner would have the burden of showing cause and prejudice or actual innocence to overcome the default.

Both the Supreme Court and the Sixth Circuit have indicated, however, that the district court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008). In the present case, petitioner's purported constitutional claim arises from the supposed use of inadmissible evidence and inflammatory

-17-

rhetoric, and both claims are indisputably meritless, so analysis of the complicated procedural default issue is unnecessary.

Questions pertaining to the proper admission of evidence and the content of opening and closing statements are matters of state law, and raise no questions of general federal rights. Consequently, to be considered as grounds for habeas relief, the challenged conduct of the prosecutor must be so egregious as to create a due-process violation. The scope of review in a habeas corpus action of prosecutorial misconduct is narrow. "Petitioner's burden on habeas review is quite a substantial one." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000). This court does "not possess supervisory powers over state court trials." *Id.* "[I]t is the responsibility of the state courts to police their prosecutors; [this court has] no such authority." *Id.* "Therefore, on habeas review, our standard is limited to 'the narrow one of due process.' " *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). To be grounds for habeas corpus relief, the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. "'[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor,' because 'the aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused.'" *Beuke v. Houk*, 537 F.3d 618, 646 (6th Cir. 2008) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). Even if the prosecutor's conduct was improper or "universally condemned," the habeas court can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair. *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008).

The first question for the habeas court is whether the prosecutor's statement was misconduct at all. *West*, 550 F.3d at 566. If so, the court is to examine four factors in determining

-18-

whether the impropriety was "flagrant":  (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial.  *Id.*; *see Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000).  A petitioner must do more than show erroneous conduct.  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden*, 477 U.S. at 181 (quoting *Donnelly v. De Christoforo*, 416 U.S. 637, 643 (1974)). Under AEDPA, this bar is heightened by the deference that the court must accord state-court rulings. *Bowling v. Parker*, 344 F.3d 487, 513 (6th Cir. 2003).

        The Michigan Court of Appeals held that the information provided by Richard Davis was neither prejudicial nor irrelevant.  The court reached the same conclusion with regard to the evidentiary testimony concerning DNA supplied by Joel Schultze and Officer Kristin Daly.  (Op., 5).  The only unfairly prejudicial effect of the DNA evidence asserted by petitioner is that these witnesses mentioned that the DNA found at the scene was matched with petitioner's using the CODIS database.  Petitioner asserts that this "as good as tells the jury that [petitioner] had a prior record. . . ."  (Brief at 28, docket # 1-4 at ID# 64).  The Court of Appeals correctly noted that this argument is based on speculation and assumption concerning inferences that the jury might have made.  But the probative effect of such testimony was clear:  the testing "was relevant to explain how it was determined that the DNA matched the DNA found on the mask, T-shirt, and earring."  (Op., 5).  The decision of the Michigan Court of Appeals was not an unreasonable application of clearly established Supreme Court precedent, nor an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

-19-

With regard to the claim that the prosecutor inappropriately appealed to the jurors' sympathies and sense of civic duty, the Michigan Court of Appeals determined that there was nothing inherent in the prosecutor's statements that would prejudice the jury to convict irrespective of the evidence. (Op., 5). In an effort to show misconduct, petitioner concatenates unobjected-to comments made in opening statement or questions to the victims, which petitioner argues were unfairly prejudicial.

> The prosecutor did this by bringing out that the people at the tavern were trying to make a living to survive, (TT I, p 78); that two individuals hit by gunfire still suffer today, (TT I, p 78); that the actions still cause fear today, (TT I, p 78-79); that the victims paid a terrible price with bodies scared [sic] forever and changed forever, (TT I, p 80); that the world for the witnesses changed forever, (TT I, p 85); that the Defendant was thwarted but not without a terrible impact, (TT I, p 87); the police officer's statement that the wound was serious and people were shaken and scared, (TT I, p 104-105); the witness was thinking of her kids and wanting to go home during the incident, (TT I, p 129); asking the witness how they felt emotionally at the time of the trial (TT I, p 174); that the witness was in pain to this day, can't work, and is on pain medication with breathing problems, (TT II, p 147-148); that this turned Cass County into a combat zone, (TT I, p 77).

(Brief at 30, docket # 1-4 at ID# 66).

The Michigan Court of Appeals held that a review of the record as a whole "reveals nothing beyond the use of passionate terms to outline for the jury what would be established by the evidence." (Op. 5). The court perceived no appeal to sympathy, prejudice or fear. Furthermore, the court alluded to the testimony of several witnesses establishing the injuries of two victims and the "fear and trauma" sustained by the parties, all of which was relevant to establishing the elements of the offenses. (*Id.*). While the prosecutor did not confine himself to the blandest possible presentation of his case, he was not obliged to. *See Byrd v. Collins*, 209 F.3d at 532, *accord U.S. v. Boyd,* No. 08-6402, ___F.3d ___, 2011 WL 1304466 at *10 (6th Cir. Apr. 7, 2011). Nothing

prevents the prosecutor from "appealing to the jurors' sense of justice, or from connecting the point to the victims in the case." *Bedford v. Collins,* 567 F.3d 225, 234 (6th Cir. 2009). The determination that the prosecutor's comments were not improper was therefore reasonable. Even assuming the findings of the state appellate court on the propriety of the statements were not entitled to substantial deference, the prosecutor's comments cannot be deemed flagrant. It is difficult to imagine how the prosecution's mildly impassioned rhetoric could constitute so egregious an error as to make the trial so unfair as to result in the denial of due process. *Darden*, 477 U.S. at 181. The evidence against petitioner was considerable and the allegedly offending arguments by the prosecutor were isolated. The purported violations were insubstantial and did not infect the fairness of the proceedings. The state court acted reasonably in this matter, and petitioner's fourth claim provides no grounds for habeas relief.

In summary, the decision of the Michigan Court of Appeals rejecting all petitioner's prosecutorial misconduct claims was not an unreasonable application of clearly established federal law as determined by the Supreme Court, nor was it an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

V.      **Improper Sentencing Under *Blakely* and *Apprendi***

Petitioner next argues that the trial court engaged in impermissible fact-finding and thus violated his Sixth Amendment right to have a jury determine all facts necessary for an increase in his sentence, as articulated in *Blakely v. Washington*, 542 U.S. 296 (2004). In this connection, petitioner asserts that the sentencing court made factual findings in scoring Offensive Variables 1, 3, 9 and 12 under the state Sentencing Guidelines. This claim is meritless. The Sixth Circuit has

now authoritatively held that *Blakely* does not apply to judicial fact-finding under Michigan's indeterminate sentencing scheme. *See Montes v. Trombley,* 599 F.3d 490, 495-98 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000 (6th Cir. 2009). In Michigan, the maximum sentence is established by statute, not by the trial judge. Because Michigan's sentencing system involves indeterminate sentencing, in which the maximum is set by law, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny do not apply. *See Blakely*, 542 U.S. at 308-09 (indeterminate sentencing system does not invade the province of the jury); *see also Dalgliesh v. McKee*, No. 09-1261, 2011 WL 1211545 (6th Cir. Apr. 1, 2011) (*per curiam*); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007) ("Tironi's sentence does not violate *Blakely v. Washington . . .* because *Blakely* does not apply to Michigan's indeterminate sentencing scheme.").

The Michigan Court of Appeals rightly rejected this claim. That conclusion was correct and clearly passes review under AEDPA standards. 28 U.S.C. § 2254(a).

## VI. Guideline Calculation Errors

In petitioner's sixth claim, he asserts numerous incorrect applications of Michigan sentencing guidelines. Specifically, petitioner challenges the scoring of Offense Variable (OV) 1, indicating the aggravating use of a weapon; OV 2, referring to the lethal potential of a weapon possessed or used; OV 3, the degree of physical injury to victim(s), here scored as life-threatening; OV 4, concerning psychological harm to the victim(s); OV 9, regarding the number of victims, here scored as between 2-9; and OV 12, regarding contemporaneous felonious acts, here scored as three or more. (Brief at 40-43, docket # 1-4 at ID#s 76-79). The Michigan Court of Appeals considered these claims and concluded they were without merit under state law. (Op., 6-7).

As grounds for habeas corpus relief, this claim falls outside the court's habeas jurisdiction. The Michigan sentencing guidelines were established by the Legislature to guide the discretion of sentencing judges in establishing the minimum range of an indeterminate sentence. Claims concerning the improper scoring of such guidelines are state-law claims and are not usually cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas corpus relief). Specifically, alleged errors in scoring the Michigan Sentencing Guidelines assert only state-law issues and do not state grounds for habeas corpus relief. *See Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003); *Haskell v. Berghuis,* 695 F. Supp.2d 574, 598 (E.D. Mich. 2010). Petitioner has not alleged grounds for the court to conclude that this is one of those rare instances where an alleged state-law sentencing error was so egregious that it led to a fundamentally unfair outcome. *See Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)).

## VII.   Ineffective Assistance of Counsel

Petitioner's final claim is that he was denied the effective assistance of counsel, specifically relating to his counsel's failure to make contemporaneous objections at trial concerning the alleged prosecutorial misconduct presented in his fourth habeas claim. These omitted objections, aside from forming the basis of this claim, were invoked as the proposed cause to circumvent the respondent's proposed procedural default bar in claim IV.

Petitioner's claim of ineffective assistance of counsel is meritless.  Claims of ineffective assistance of counsel are measured under the standards established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687-88.  In adjudicating the first prong of the standard, the court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.

The court should recognize that counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.  The Sixth Amendment is violated only if counsel's acts or omissions "were outside the wide range of professionally competent assistance." *Id.*  Strategic choices after thorough investigation of law and facts relevant to plausible options are "virtually unchallengeable." *Id*.  To prevail on the second prong, petitioner must demonstrate a "reasonable probability" that the result of the trial would have been different but for counsel's errors. *Id.* at 694.

Because the state circuit court and court of appeals directly addressed petitioner's claims of ineffective assistance of trial counsel, their decision must be afforded deference under AEDPA.  To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*.  *See Bell*, 535 U.S. at 698-99; *Lovell v. Duffey*, 629 F.3d 587-594-95 (6th Cir. 2011).  Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied

-24-

*Strickland* incorrectly. Rather, petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Tibbetts v. Bradshaw*, 633 F.3d 436, 442 (6th Cir. 2011). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009). Recent Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 129 S. Ct. at 1420; *see Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*). Furthermore, the findings of historical fact made by the state courts are presumed to be correct, in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

Petitioner does not begin to satisfy the demanding *Strickland* standard. As noted above, the Michigan Court of Appeals observed that the instances of so-called prosecutorial misconduct involved no misconduct at all. (Op., 5). Thus, objections would have been futile. Counsel's failure to make futile objections may be viewed as a strategic decision meant to preserve his credibility, and thus cannot be challenged. *Strickland*, 466 U.S. at 690. Nor could the failure to raise futile objections have prejudiced the defendant, as the result would have been the same even if they were voiced and overruled. *Id.* at 694. The Michigan Court of Appeals decision rejecting petitioner's claims of ineffective assistance of counsel was not an unreasonable application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).

**Recommended Disposition**

For the foregoing reasons, I recommend that the petition be denied.

Dated:   June 16, 2011                    /s/  Joseph G. Scoville
                                        United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).   General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).